ASSOCIATED BUSINESS TELEPHONE SYSTEMS CORPORATION, Appellee,

v.

GREATER CAPITAL CORPORATION, Mark Cohn, Steve Cohn, John Doe, Richard Doe and Jane Doe, Appellants.

Nos. 88–5274, 88–5353.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1988.

Decided Nov. 18, 1988.

**794**

David L. Creskoff, Mark R. Rosen (argued), Anthony Watkins (Mesirov, Gelman, Jafee, Cramer & Jamieson, Cherry Hill, N.J., of counsel), for appellants.

Thomas R. O'Brien (argued), Robert E. Nies (Kimmelman, Wolff & Samson, Roseland, N.J., of counsel), for appellee.

Before GIBBONS, Chief Judge, SEITZ, Circuit Judge and POLLAK, District Judge *.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

This matter is before us as a result of the filing of two notices of appeal. One notice, filed April 4, 1988, seeks review of an order of the district court dated March 2, 1988. The second notice, filed April 28, 1988, seeks review of an order of the district court dated April 22, 1988. Both orders were entered in the course of a diversity contract dispute over the performance of a commercial contract for the installation and operation of a telephone system in a hotel. The plaintiff is Associated Business Telephone Systems Corporation (Associated), a New Jersey corporation with its principal place of business in that state. The defendants are Greater Capital Corporation (Greater Capital), a California corporation which operates a hotel in Rosemont, Illinois, and several of its principal officers, directors, and stockholders.

Pursuant to a contract, Associated installed its telephone equipment at the hotel. Greater Capital was obliged to collect the revenue generated from hotel guest use of the system, and deposit that revenue in a designated federally insured bank account. From that bank account, the gross revenue was supposed to be distributed to pay the cost of telephone charges from local and long distance carriers, the cost of maintenance of the system, the cost of debt service for the system, and 25% of the revenue was to be returned to Greater Capital. The system was designed so that Associated could monitor telephone activity and account for use of the system remotely from New Jersey.

Associated filed a complaint charging that, in violation of the agreement, Greater Capital failed to deposit in the designated bank account charges collected from hotel guests, and disconnected the remote monitoring system. The complaint also alleged that those charges are trust funds, and that the individual officers, directors, and stockholders participated in the conversion of those trust funds. Associated sought, alternatively, possession of the system, an injunction against use of the system without depositing the gross receipts, compen-

* Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

satory damages of various kinds, and punitive damages for conversion. Initially the defendants moved to dismiss the complaint for lack of personal jurisdiction over them. When that motion was denied, they filed an answer and a counterclaim. The counterclaim charged that (1) as a result of improper programming of the system, hotel guests were overcharged, with resulting damage to the hotel's reputation and business; (2) Associated failed and refused to provide records verifying its charges to the account; and (3) Associated relied excessively on microwave and satellite transmission instead of land lines, which resulted in reduced quality of service.

The April 28, 1988 notice of appeal is from an order dated April 22, 1988, which provides:

> For the reasons set forth in the Court's opinion filed this day; and For good cause shown; It is on this 22nd day of April 1988 *ORDERED* that the Court's prior orders are hereby *MODIFIED* consistent with the Court's opinion filed this day.

The opinion to which the order refers disposed of a motion to modify the district court's prior orders on the ground that they were incapable of performance. One such order was that of December 8, 1987, which, without resolving which side had breached the contract, granted Associated's motion for partial summary judgment ordering defendants "to make payments of the gross telephone operating revenue and other charges under the Agreement to a federally insured bank for further distribution therefrom pursuant to the terms of the Agreement." Greater Capital did not make such payments, contending that the December 8, 1987 order failed to identify which bank should receive the money. On Associated's motion for further relief, the court on March 2, 1988, directed that Greater Capital should deposit $338,269.14 in New Jersey National Bank. The defendants then moved for relief from the March 2, 1988 order on the ground that they lacked present financial ability to comply. Confronted with this admission of inability to

comply, the district court, relying on the Event of Default provision in the agreement, declared Greater Capital to be in default, and ordered the defendants to afford Associated access, after ten days, to the hotel so that it could repossess and remove the system.

The April 4 notice of appeal is from the March 2, 1988 order referred to above, which directs the payment of $338,269.14 into an account at New Jersey National Bank. The April 22, 1988 order does not, at least explicitly modify the March 2, 1988 order to pay $338,269.14, which represents revenue collected by the hotel from guests, prior to March 2, for telephone service utilizing the system.

The complaint and counterclaim remain pending in the district court, and this circumstance requires that we consider whether either order is appealable.

▇ In the opinion to which the April 22, 1988 order refers, the district court states:

> The Court's findings that defendants have breached the Agreement and that plaintiff is entitled to remove its telephone system are hereby certified as final for purposes of execution and appeal pursuant to Federal Rule of Civil Procedure 54(b).

Assuming, without deciding, that this language would be sufficient compliance with Fed.R.Civ.P. 54(b),[1] this certification is nevertheless insufficient for purposes of appellate jurisdiction under 28 U.S.C. § 1291. The order does not dispose of a separate claim, but only of a part of Associated's claim for breach of contract. A partial disposition of a single claim may not be treated as a final judgment. *Marino v. Nevitt*, 311 F.2d 406, 408 (3d Cir.1968). The defendants, who are the appellants here, conceded at oral argument that neither the April 22, 1988 order nor the March 2, 1988 order are appealable as final judgments.

▇ The defendants contend, however, that both orders are appealable under 28 U.S.C. § 1292(a)(1). The March 2, 1988 or-

---

1. We note that there is no express determination that there is no reason for delay.

der should be regarded as a preliminary injunction, they urge, because it directs them, under pain of contempt, to pay money into the account at New Jersey National Bank. We note that in the April 22, 1988 opinion the district court observed:

Because defendants represent that they are unable to comply with the order to deposit money, the Court will not find defendants in contempt of that order.

Arguably the district court inferred that absent inability to pay, the defendants might have been held in contempt. If so, the March 2, 1988 order might properly be treated as an injunction. At oral argument on this appeal, however, counsel for Associated conceded that the order to pay $338,269.14 was not presently enforceable either by execution or by contempt. It is, therefore, at most a partial adjudication of the breach of contract claim. As such, it is not appealable under 28 U.S.C. § 1292(a)(1).

The April 22, 1988 order, on the other hand, directed the defendants to permit Associated access to the hotel in order to remove its equipment. Both parties agree that this order was a preliminary injunction which, had it not been complied with, would have been enforced by contempt. To the extent that the April 22, 1988 order directed Greater Capital to permit removal of the equipment, it is therefore appealable under 28 U.S.C. § 1292(a)(1).

Associated, however, has moved to dismiss the appeal on the ground that since the order has been complied with, the appeal is moot. Greater Capital responds that it still wants the system returned, even though it has now been replaced. Although Associated suggests that we should be skeptical of this representation, we believe that, absent the development of a factual record, it suffices to prevent a dismissal of the section 1292(a)(1) appeal on mootness grounds.

Our conclusion that section 1292(a)(1) permits us to review the injunctive aspects of the April 22, 1988 order requires a determination as to what issues may be considered on such an appeal. We must, of course, consider whether, in entering the order permitting repossession, the district court abused its discretion or committed an obvious error of law. *E.g., Tustin v. Heckler,* 749 F.2d 1055, 1060 (3d Cir.1984).

The defendants, however, urge that as a threshold matter we should consider whether *any* relief should have been granted by a court lacking in personam jurisdiction over them. Thus, they urge, we should review the district court's August 26, 1987 ruling denying their motion to dismiss for lack of personal jurisdiction. In that ruling, the court held that there was personal jurisdiction over Greater Capital, and over Steve and Mark Cohn, who were key players in negotiating and implementing the contract. The court also held that Ethel Cohn, although president of Greater Capital, had insufficient involvement with the contract to justify the exercise of personal jurisdiction over her.

The denial of a motion to dismiss for lack of in personam jurisdiction is a classic example of an interlocutory ruling. Such rulings should be reviewed on a section 1292(a)(1) appeal only if they bear upon the propriety of the preliminary injunction. In this respect, there is a distinction between the district court's ruling that Greater Capital is subject to in personam jurisdiction and its ruling that Steve and Mark Cohn, California residents, are also subject to such jurisdiction. The personal jurisdictional issues with respect to Greater Capital and the individual defendants are distinct, factually and legally. If the district court has personal jurisdiction over Greater Capital, it has jurisdiction to grant pendente lite relief against that corporation, which in no way depends on personal jurisdiction over the individual California defendants. Thus the in personam jurisdiction ruling with respect to the latter cannot affect the merits of the appeal from the order permitting Associated to repossess the system. That being so, we will not address Steve and Mark Cohn's personal jurisdictional contentions.

The district court, examining the affidavits on file, held that although Greater Capital did not have sufficient systematic contact with New Jersey to sustain general

jurisdiction over it, there was a sufficient nexus between the instant contract dispute and the State of New Jersey to permit the exercise of adjudicatory power with respect to that dispute. The record, according to the district court, demonstrates that Greater Capital by entering into a long term contract had created continuing obligations between itself and Associated, a business located in New Jersey. The contract was to have a ten year life. Associated was to act as exclusive general contractor and facility manager, with twenty-four hour access to the system for the purpose of maintaining it. The contract provides that any communication to Associated must be sent to its New Jersey office. It required that Greater Capital permit Associated, in New Jersey, to continually monitor electronically all phone usage at the hotel. Greater Capital interfered with that monitor, thereby depriving a New Jersey business of its use. The link-up with Associated in New Jersey gave Associated the power, in that state, to unilaterally disconnect Greater Capital's long-distance service. Associated undertook to send its service and training personnel from New Jersey to Greater Capital's hotel. Greater Capital was aware that, by withholding revenue which should have been deposited, it would cause injury to a business in New Jersey.

We agree that the affidavits on file sufficed to support the exercise by the district court of personal jurisdiction over Greater Capital with respect to this contract dispute. *See Burger King Corp. v. Rudzewecz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed. 2d 528 (1984); *Time Share Vacation Clubs v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 (3d Cir.1984).

■ We turn, therefore, to the merits of the order directing Greater Capital to permit removal by Associated of its telephone system. Although the district court characterized its ruling as a partial final judgment, that characterization was, as we noted above, a nullity.[2] Our review of a pendente lite preliminary injunction is far nar-

rower than our review of a summary judgment. We must determine whether the district court abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof. *Tustin v. Heckler,* 749 F.2d 1055, 1060 (3d Cir.1984); *Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955 (3d Cir.1984). In applying for the preliminary injunction, Associated was obliged to show a reasonable probability of eventual success, irreparable harm pendente lite, the possibility of harm to other parties, and, if relevant, the public interest. *Delaware River [Port] Auth. v. Transamerica Trailer Transp., Inc.,* 501 F.2d 917, 919–20 (3d Cir.1974).

We note, first, that Associated will be very likely to succeed in litigation on its claim that the hotel may not keep the phone system without paying anything, while Associated remains liable for toll charges. Moreover, if the hotel were allowed to keep the system pendente lite and pay nothing, the depreciation and loss of revenue would probably never be recovered, since Greater Capital asserts it cannot pay existing arrearages. Meanwhile, Associated would be incurring its own ongoing debt service charges. In these circumstances, we cannot hold that the district court abused its discretion in ordering return of the system.

The appeals from the March 2, 1988 order will be dismissed. The appeals of Steve and Mark Cohn from the April 22, 1988 order will be dismissed. In Greater Capital's appeal from the April 22, 1988 order directing it to permit Associated to remove the telephone system, the order will be affirmed.

---

2. If the order was properly characterized as a summary judgment for injunctive relief on a separate claim, our review would be plenary even if appellate jurisdiction depended on 28 U.S.C. § 1292(a)(1).